UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| JOHN QUINTERO,<br><br>Plaintiff,<br><br>v.<br><br>ROMEO ARANAS, *et. al.,*<br><br>Defendants. | Case No. 3:17-cv-00066-MMD-CLB<br><br>**REPORT AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE**[1]<br><br>[ECF No. 258] |

This case involves a civil rights action filed by Plaintiff John Quintero ("Quintero") against Defendants Isidro Baca ("Baca"), Perry Russell ("Russell"), Julio Calderin ("Calderin"), Donald Burse ("Burse"), and Harold Wickham ("Wickham") (collectively referred to as "Defendants"). Currently pending before the Court is Defendants' motion for summary judgment. (ECF No. 258.) Quintero opposed the motion, (ECF No. 261), and Defendants replied, (ECF No. 264). For the reasons stated below, the Court recommends that Defendants' motion for summary judgment, (ECF No. 258), be granted in part and denied in part.

**I.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

Quintero is an inmate in the custody of the Nevada Department of Corrections ("NDOC"). On February 1, 2017, Quintero filed a civil rights complaint under 42 U.S.C. § 1983 for events that occurred while Quintero was incarcerated at the Northern Nevada Correctional Center ("NNCC"). (ECF No. 1-1.) On June 15, 2017, Quintero filed a first amended complaint, (ECF No. 3), which the District Court screened pursuant to 28 U.S.C. § 1915A, on March 27, 2018. (ECF No. 6.) The screening order allowed Quintero to proceed on certain claims and gave him to leave to amend as to other claims. (*Id.*)

---

[1]   This Report and Recommendation is made to the Honorable Miranda M. Du, United States District Judge. The action was referred to the undersigned Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) and LR IB 1-4.

Quintero filed his second amended complaint on April 26, 2018, (ECF No. 7), which the District Court screened on February 26, 2019, (ECF No. 9).

The District Court allowed Quintero to proceed as follows: (1) portion of Count I alleging an Eighth Amendment claim against Noll; (2) Count II, alleging a First Amendment claim against McDaniels; (3) portion of Count III alleging a First Amendment claim against Ward; (4) portion of Count IV alleging a First Amendment claim against Simmons and John Doe Mailroom Officer; (5) portion of Count V alleging a Fourteenth Amendment equal protection claim against Snyder and Doe members of the Religious Review Team ("RRT"); (6) Count VI will proceed against Baca to the extent it seeks punitive damages for an Eighth Amendment violation, but not to the extent it seeks damages for emotional or psychological harm; (7) portion of Count VII alleging a First Amendment claim against Dzurenda; (8) Count VIII, alleging an Eighth Amendment claim against Aranas; and (9) Count X, alleging an Eighth Amendment claim against Dzurenda. (*Id.* at 22-23.) The following claims were dismissed, with prejudice: (1) portions of Count I alleging Eighth Amendment claims against "the warden" and Keats and Aranas; (2) portions of Count I alleging Fourteenth Amendment due process and equal protection claims and ADA claims; (3) portion of Count III alleging a Commerce Clause claim; (4) portions of Count IV alleging First Amendment claims against Fajota, Berryman, Dzurenda, and Baca; (5) portions of Count V alleging RLUIPA and First Amendment free exercise of religion claims; (6) portions of Count VII alleging Commerce Clause, Eighth Amendment, and Fourteenth Amendment claims; and (7) Count IX. (*Id.*)

On October 21, 2019, a scheduling order was entered in this case, with a discovery cutoff date of January 20, 2020. (ECF No. 30 at 2.) Discovery has been extended multiple times throughout the litigation, with the latest deadline set for February 11, 2022. (*See* ECF Nos. 43, 106, 142, 183, 219, 238.)

On December 30, 2020, the parties participated in a settlement conference, and ultimately the parties settled all but two claims – Counts V and VI. (ECF No. 197, 212, 221.) Claim V asserts a Fourteenth Amendment equal protection claim based on

allegations that other religions have been accommodated by the RRT with respect to their requests for outdoor prayer space, but Quintero, who is Catholic, was not. (ECF No. 7 at 15.) Claim VI asserts an Eighth Amendment deliberate indifference to unsafe conditions claim relating to an allegedly unsafe guard to inmate ratio in Quintero's housing unit. (*Id.* at 16-17.)

On December 10, 2021, the Court granted a motion for permissive joinder to join Harold Wickham to Counts V and VI. (ECF No. 236.) The same day, the Court also granted a motion to substitute Chaplains Calderin and Burse—in their official capacities—for deceased Chaplain Snyder. (ECF No. 237.)

Quintero then filed a motion to file a third amended complaint, motion to add exhibits to the proposed third amended complaint, and a motion for leave to request additional discovery from Defendant Wickham. (ECF Nos. 240, 244, 241, respectively.) On February 10, 2022, the Court granted Quintero's motion for leave to file a third amended complaint. (ECF No. 247.) The third amended complaint, which is the operative complaint in this case, consisted of two claims for relief: (1) an equal protection claim against Defendants Wickham, Calderon, and Burse; and (2) a deliberate indifference claim against Defendants Baca, Wickham, and Perry Russell. (*See* ECF Nos. 248, 247.) Specifically, Russell was added as a defendant to the third amended complaint as he replaced Baca as Warden of the Northern Nevada Correctional Center ("NNCC") and had the ability to implement the requested injunctive relief. However, after the Court granted the motion for leave to file a third amended complaint, Defendant Russell left NNCC and was replaced by another warden, Olsen. Thus, Quintero sought to join or alternatively substitute Warden Olsen for former Warden Russell. (ECF No. 250.) The Court granted the motion, and substituted Defendant Olsen for Defendant Russell as to Count VI of the Third Amended Complaint. (ECF No. 254.)

Thus, the only remaining claims in this action are Count V, the equal protection claim against Defendants Wickham, Calderon, and Burse, and Count VI, a conditions of confinement claim against Defendants Baca, Wickham, and Olsen. (ECF No. 247 at 6.)

3

Now pending before the Court is Defendants' motion for summary judgment, (ECF No. 258). Defendants argue they are entitled to summary judgment because: (1) Quintero cannot establish a violation of the Equal Protection Clause as he received the same access to religious space as any other inmate at NNCC; (2) he cannot establish Defendants acted intentionally to discriminate against him based on his religion; (3) the RRT Defendants are entitled to qualified immunity; (4) Quintero cannot establish an Eighth Amendment conditions of confinement violation as his unit was not the subject of the Court's injunction in *Stickney v. List*, 3:19-cv-00011-RCJ; (5) he was not injured as a result of alleged staffing issues; and (6) he did not properly exhaust his administrative remedies as to the conditions claim. (ECF No. 258.)

## II.  LEGAL STANDARDS

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The substantive law applicable to the claim determines which facts are material. *Coles v. Eagle*, 704 F.3d 624, 628 (9th Cir. 2012) (citing *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986)). Only disputes over facts that address the main legal question of the suit can preclude summary judgment, and factual disputes that are irrelevant are not material. *Frlekin v. Apple, Inc.*, 979 F.3d 639, 644 (9th Cir. 2020). A dispute is "genuine" only where a reasonable jury could find for the nonmoving party. *Anderson*, 477 U.S. at 248.

The parties subject to a motion for summary judgment must: (1) cite facts from the record, including but not limited to depositions, documents, and declarations, and then (2) "show[] that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Documents submitted during summary judgment must be authenticated, and if only personal knowledge authenticates a document (i.e., even a review of the contents of the document would not prove that it is authentic), an affidavit attesting to its authenticity must be attached to the submitted document. *Las Vegas Sands,*

*LLC v. Neheme*, 632 F.3d 526, 532-33 (9th Cir. 2011). Conclusory statements, speculative opinions, pleading allegations, or other assertions uncorroborated by facts are insufficient to establish the absence or presence of a genuine dispute. *Soremekun v. Thrifty Payless, Inc.*, 509 F.3d 978, 984 (9th Cir. 2007).

The moving party bears the initial burden of demonstrating an absence of a genuine dispute. *Soremekun*, 509 F.3d at 984. "Where the moving party will have the burden of proof on an issue at trial, the movant must affirmatively demonstrate that no reasonable trier of fact could find other than for the moving party." *Soremekun*, 509 F.3d at 984. However, if the moving party does not bear the burden of proof at trial, the moving party may meet their initial burden by demonstrating either: (1) there is an absence of evidence to support an essential element of the nonmoving party's claim or claims; or (2) submitting admissible evidence that establishes the record forecloses the possibility of a reasonable jury finding in favor of the nonmoving party. *See Pakootas v. Teck Cominco Metals, Ltd.*, 905 F.3d 565, 593-94 (9th Cir. 2018); *Nissan Fire & Marine Ins. Co. v. Fritz Cos.*, 210 F.3d 1099, 1102 (9th Cir. 2000). The court views all evidence and any inferences arising therefrom in the light most favorable to the nonmoving party. *Colwell v. Bannister*, 763 F.3d 1060, 1065 (9th Cir. 2014). If the moving party does not meet its burden for summary judgment, the nonmoving party is not required to provide evidentiary materials to oppose the motion, and the court will deny summary judgment. *Celotex*, 477 U.S. at 322-23.

Where the moving party has met its burden, however, the burden shifts to the nonmoving party to establish that a genuine issue of material fact actually exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, (1986). The nonmoving must "go beyond the pleadings" to meet this burden. *Pac. Gulf Shipping Co. v. Vigorous Shipping & Trading S.A.*, 992 F.3d 893, 897 (9th Cir. 2021) (internal quotation omitted). In other words, the nonmoving party may not simply rely upon the allegations or denials of its pleadings; rather, they must tender evidence of specific facts in the form of affidavits, and/or admissible discovery material in support of its contention that such a dispute exists. *See* Fed. R. Civ. P. 56(c); *Matsushita,* 475 U.S. at 586 n. 11. This burden

1  is "not a light one," and requires the nonmoving party to "show more than the mere existence of a scintilla of evidence." *Id.* (quoting *In re Oracle Corp. Sec. Litig.*, 627 F.3d 376, 387 (9th Cir. 2010)). The non-moving party "must come forth with evidence from which a jury could reasonably render a verdict in the non-moving party's favor." *Pac. Gulf Shipping Co.*, 992 F.3d at 898 (quoting *Oracle Corp. Sec. Litig.*, 627 F.3d at 387). Mere assertions and "metaphysical doubt as to the material facts" will not defeat a properly supported and meritorious summary judgment motion. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87 (1986).

When a *pro se* litigant opposes summary judgment, his or her contentions in motions and pleadings may be considered as evidence to meet the non-party's burden to the extent: (1) contents of the document are based on personal knowledge, (2) they set forth facts that would be admissible into evidence, and (3) the litigant attested under penalty of perjury that they were true and correct. *Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

Upon the parties meeting their respective burdens for the motion for summary judgment, the court determines whether reasonable minds could differ when interpreting the record; the court does not weigh the evidence or determine its truth. *Velazquez v. City of Long Beach*, 793 F.3d 1010, 1018 (9th Cir. 2015). The court may consider evidence in the record not cited by the parties, but it is not required to do so. Fed. R. Civ. P. 56(c)(3). Nevertheless, the court will view the cited records before it and will not mine the record for triable issues of fact. *Oracle Corp. Sec. Litig.*, 627 F.3d at 386 (if a nonmoving party does not make nor provide support for a possible objection, the court will likewise not consider it).

### III.  DISCUSSION

#### A.  Count V – Fourteenth Amendment Equal Protection

"The Equal Protection Clause requires the State to treat all similarly situated people equally." *Shakur v. Schriro*, 514 F.3d 878, 891 (9th Cir. 2008) (citing *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985)). To prevail on an equal protection claim

under § 1983, the plaintiff must establish that "the defendants acted with an intent or purpose to discriminate against [him] based upon membership in a protected class." *Hartmann*, 707 F.3d at 1123 (quotation marks and citation omitted).

"[T]he Equal Protection Clause entitles each prisoner to 'a reasonable opportunity of pursuing his faith comparable to the opportunity afforded fellow prisoners who adhere to conventional religious precepts.'" *Shakur*, 514 F.3d at 891 (quoting *Cruz v. Beto*, 405 U.S. 319, 322 (1972)). "This does not mean, however, that all prisoners must receive identical treatment and resources." *Hartmann*, 707 F.3d at 1123 (citing *Cruz*, 405 U.S. at 322 n.2).

In *Shakur*, the Ninth Circuit said the standard applied to an inmate's religious equal protection claim is the four-part reasonableness test under *Turner v. Safley*, 482 U.S. 78 (1987). Under that test, the inmate cannot succeed "if the difference between the defendants' treatment of him and their treatment of [inmates of another faith group] is reasonably related to legitimate penological interests." *Id.* (citation and quotation marks omitted).

The *Turner* reasonableness factors are: (1) "there must be a 'valid, rational connection' between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates, and on the allocation of prison resources generally"; (4) the "absence of ready alternatives" and "the existence of obvious, easy alternatives." *Turner*, 482 U.S. at 89-91; *see also O'Lone*, 482 U.S. at 349.

In their motion for summary judgment, Defendants argue Quintero cannot prevail on his equal protection claim because Quintero has equal chapel access, and may pray or worship on his own, or with others, subject to the requirements of the correctional institution, just like every other inmate. (ECF No. 258 at 5-6.) However, Defendants do not specifically address—let alone cite—the *Turner* factors in their motion for summary judgment. Thus, they have not met their initial burden for purposes of summary judgment

7

on this claim to establish there are no issues of material fact. Accordingly, the motion should be denied as to the Fourteenth Amendment Equal Protection Clause claim as alleged in Count V.

### 1. Qualified Immunity

The Eleventh Amendment bars damages claims and other actions for retroactive relief against state officials sued in their official capacities. *Brown*, 751 F.3d at 988–89 (citing *Pennhurst*, 465 U.S. at 100). State officials who are sued individually may also be protected from civil liability for money damages by the qualified immunity doctrine. More than a simple defense to liability, the doctrine is "an entitlement not to stand trial or face other burdens of litigation . . ." such as discovery. *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985).

When conducting a qualified immunity analysis, the Court asks "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson v. Callahan*, 555 U.S. 223, 232, 236 (2009)). A right is clearly established if it would be clear to a reasonable official in the defendant's position that his conduct in the given situation was constitutionally infirm. *Anderson v. Creighton,* 483 U.S. 635, 639–40, (1987); *Lacey v. Maricopa Cnty.*, 693 F.3d 896, 915 (9th Cir. 2012). The Court may analyze the elements of the test in whatever order is appropriate under the circumstances of the case. *Pearson*, 555 U.S. at 240–42. A right is clearly established when the "contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Serrano v. Francis*, 345 F.3d 1071, 1077 (9th Cir. 2003) (quoting *Anderson*, 483 U.S. at 640).

"[J]udges of the district courts… should be permitted to exercise their sound discretion in deciding which of the two prongs of the qualified immunity analysis should be addressed first in light of the circumstances in the particular case at hand." *Pearson*, 555 U.S. at 236. "[W]hether a constitutional right was violated… is a question of fact." *Tortu v. Las Vegas Metro. Police Dep't*, 556 F.3d 1075, 1085 (9th Cir. 2009). While the Court

1  decides as a matter of law the "clearly established" prong of the qualified immunity
2  analysis, only the jury can decide the disputed factual issues. *See Morales v. Fry*, 873
3  F.3d 817, 824-25 (9th Cir. 2017); *Reese v. Cty. Of Sacramento*, 888 F.3d 1030, 1037 (9th
4  Cir. 2018).

5  Defendants contend that they are entitled to qualified immunity as to Claim V
6  because Quintero's right, if any, to an outside worship space is not clearly established
7  under the law. It is not required that there be a case directly on point before concluding
8  that the law is clearly established, "but existing precedent must have placed the statutory
9  or constitutional question beyond debate." *Stanton v. Sims*, 571 U.S. 3, 6 (2013) (quoting
10 *Ashcroft v. al-Kidd*, 563 U.S. 731, 743 (2011)). "For a right to be clearly established it is
11 not necessary that the very action in question have previously been held unlawful."
12 *Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996) (citing *Anderson*, 483 U.S. at 640).
13 "To define the law in question too narrowly would be to allow defendants to define away
14 all potential claims." *Jackson*, 90 F.3d at 332 (citing *Kelley v. Borg*, 60 F.3d 664, 667 (9th
15 Cir. 1995)).

16 Here, it is clearly established that a prison official violates the Equal Protection
17 Clause if an inmate is not given "a reasonable opportunity of pursuing his faith comparable
18 to the opportunity afforded fellow prisoners who adhere to conventional religious
19 precepts." *Shakur*, 514 F.3d at 891 (quotation marks and citation omitted). Taking the facts
20 in the light most favorable to Quintero, a fact finder could determine that Defendants
21 violated this right. For these reasons, Defendants are not entitled to qualified immunity as
22 to Claim V.

23 **B.    Count VI – Eighth Amendment Conditions of Confinement**

24 Under the Eighth Amendment, prison conditions should not "involve the wanton and
25 unnecessary infliction of pain" or be "grossly disproportionate to the severity of the crime
26 warranting imprisonment." *Rhodes v. MO Chapman*, 452 U.S. 337, 347 (1981). "Prison
27 officials have a duty to ensure that prisoners are provided adequate shelter, food, clothing,
28 sanitation, medical care, and personal safety." *Johnson v. Lewis*, 217 F.3d 726, 731 (9th

Cir. 2000).

To establish a violation of these duties, the inmate must establish that prison officials were "deliberately indifferent" to serious threats to the inmate's safety. *Farmer*, 511 U.S. at 834. Under the deliberate indifference standard, a violation of the Eighth Amendment is only found when an objective and subjective component are met. *See id.* at 834.

"[T]o satisfy the objective prong, it is enough for the inmate to demonstrate that he was exposed to a substantial risk of some range of serious harms; the harm he actually suffered need not have been the most likely result among this range of outcomes." *Id.* at 1076 (citing *Gibson v. Cnty. of Washoe, Nev.*, 290 F.3d 1175, 1193 (9th Cir. 2002)). It does not matter "whether a prisoner faces an excessive risk ... for reasons personal to him or because all prisoners in his situation face such a risk." *Farmer*, 511 U.S. at 843.

The inmate must also satisfy the subjective element. This means that the prison official being sued must have known of and disregarded the risk to the inmate's safety. *Farmer*, 511 U.S. at 837. "Mere negligence is not sufficient to establish liability." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). Further, a plaintiff "must also demonstrate that the defendants' actions were both an actual and proximate cause of their injuries." *Lemire v. California*, 726 F.3d 1062, 1074 (9th Cir. 2013) (citing *Conn v. City of Reno*, 591 F.3d 1081, 1098-1101 (9th Cir. 2010), *vacated by City of Reno, Nev. v. Conn*, 563 U.S. 915 (2011), *reinstated in relevant part* 658 F.3d 897 (9th Cir. 2011).

Quintero's main contention in his Count VI claim appears to be premised on the belief that the injunctive relief awarded in *Stickney v. List* applies to him. The *Stickney* case arose out of inadequate staffing at the Northern Nevada Correctional Center ("NNCC"). In 1979, Plaintiff Robert Stickney filed the action, arguing that various conditions at NNCC violated the Eighth Amendment. District Judge Edward C. Reed certified the case as a class action in 1981 and entered judgment in 1982 after a bench trial, wherein Judge Reed found that violence at NNCC "exceed[ed] constitutional standards" and was due "essentially to understaffing," and ultimately ordered injunctive relief related to staffing

ratios. *See Stickney v. List*, 3:79-CV-00011-RCJ, 2018 WL 1858220 at *1 (D. Nev. Apr. 16, 2018).

First, the *Stickney v. List* requirements were limited to Units 1, 2 and 3 of NNCC. (*See* ECF No. 258-4). Quintero was housed in Unit 10A when he filed his Complaint. (ECF No. 248 at 10, *see also* ECF No. 258-5.) Quintero admits that NNCC was in compliance with the *Stickney* requirements as to Units 1, 2 and 3. (*Id.*) Additionally, Quintero admits he suffered no personal injury as a result of any staffing issues. (ECF No. 248.) Further, there is no evidence that Defendants Baca or Wickham were aware of an excessive risk to Quintero's safety. (ECF Nos. 258-8, 258-12; *see Parsons v. Ryan*, 754 F.3d 657, 677 (9th Cir. 2014) (when the issue is exposure to a risk of future harm, deliberate indifference is assessed not based on a prison official's awareness of current harm, but instead is assessed based on the prison official's awareness of a serious risk of substantial harm).)

Quintero has no evidence to show Defendants were aware of a serious risk of harm and to the extent Quintero is attempting to use the *Stickney* case to show an inference that his safety is at risk based on limited staffing, mere negligence is insufficient to establish liability. *See Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998). In sum, Quintero cannot prevail on his Eighth Amendment conditions of confinement claim and Defendants should be granted summary judgment accordingly.

**IV.   CONCLUSION**

For good cause appearing and for the reasons stated above, the Court recommends that Defendants' motion for summary judgment, (ECF No. 258), be granted, in part, and denied, in part.

The parties are advised:

1.   Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule IB 3-2 of the Local Rules of Practice, the parties may file specific written objections to this Report and Recommendation within fourteen days of receipt. These objections should be entitled "Objections to Magistrate Judge's Report and Recommendation" and should be accompanied by points and authorities for consideration by the District Court.

2. This Report and Recommendation is not an appealable order and any notice of appeal pursuant to Fed. R. App. P. 4(a)(1) should not be filed until entry of the District Court's judgment.

## V. RECOMMENDATION

**IT IS RECOMMENDED** that Defendants' motion for summary judgment, (ECF No. 258), be **GRANTED in part and DENIED in part**, as outlined:

- Defendants motion should be denied as to the Count V equal protection claim; and
- Defendants motion should be granted as to the Count VI conditions of confinement claim.

**IT IS FURTHER RECOMMENDED** that Defendants Baca and Olsen be dismissed from this action.

**DATED**: August 16, 2022.

_____
**UNITED STATES MAGISTRATE JUDGE**